# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

In the Matter of the Search of: )
)
Information associated with the cellular telephone assigned )
call number (414) 937-0832, that is stored at premises ) Case No. 19-829M (NJ)
controlled by T-Mobile )
)
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

See Attachment A. This court has authority to issue this warrant under 18 U.S.C. §§ 2703(c)(1)(A) and 2711(3)(A).

located in the Eastern District of Wisconsin, there is now concealed:

See Attachment B.

The basis for the search under Fed. R. Crim P. 41(c) is:
- ■ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ■ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of: Title 18, United States Code, Sections 2113(a), 2113(d), 924(c)(1)(A)(ii), 922(g)(1), and 924(e).

The application is based on these facts: See attached affidavit.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days:_____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Robert Rice, FBI Special Agent
*Printed Name and Title*

Sworn to before me and signed in my presence:

Date: February 21, 2019

_____
*Judge's signature*

City and State: Milwaukee, Wisconsin          Honorable Nancy Joseph, U.S. Magistrate Judge
*Printed Name and Title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Robert Rice, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for information associated with a certain cellular telephone assigned call number (414) 937-0832, that is stored at premises controlled by T-Mobile, a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, New Jersey 07054. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require T-Mobile to disclose to the government copies of the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2. I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been for approximately 14 years. I am currently assigned to the FBI's Milwaukee Area Violent Crimes Task Force. This Task Force is a multi-jurisdictional law enforcement entity charged with investigating violations of federal law, including bank robberies, commercial robberies, and other violent crime matters, defined under Title 18 of the United States Code. I have participated in numerous investigations involving violations of federal, state, and local laws, including investigations of bank robberies and other commercial robberies.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended

to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 18, United States Code, Section 2113(a) (entering to commit a bank robbery), Title 18, United States Code, Section 2113(a) and (d) (armed bank robbery), Title 18, United States Code, Section 924(c)(1)(A)(ii) (use of a firearm during a crime of violence), and Title 18, United States Code, Sections 922(g)(1) (unlawful possession of a firearm by a prohibited person) have been committed by Quadir S. El Amin and Leslie Wilbert. There is also probable cause to search the information described in Attachment A for evidence and instrumentalities of these crimes as described in Attachment B.

## **PROBABLE CAUSE**

5. On September 18, 2018, a federal grand jury in the Eastern District of Wisconsin returned an indictment against Quadir S. El Amin for violations of Title 18, United States Code, Section 2113(a) (entering to commit a bank robbery), Title 18, United States Code, Section 2113(a) and (d) (armed bank robbery), Title 18, United States Code, Section 924(c)(1)(A)(ii) (use of a firearm during a crime of violence), and Title 18, United States Code, Sections 922(g)(1) and 924(e) (unlawful possession of a firearm by a prohibited person). On December 3, 2018, El Amin entered a guilty plea to Count 2 and Count 4 of the Indictment in Case No. 18-CR-181. He is set to be sentenced before the Honorable J.P. Stadtmueller on February 28, 2019.

6. On Friday, August 24, 2018 at approximately 1:22 p.m., a black male subject, later identified as Quadir S. El Amin, attempted to rob the Wells Fargo bank located at 6130 West National Avenue in West Allis, Wisconsin. The bank is a federally insured financial

2

institution with its funds insured by the Federal Deposit Insurance Corporation. The subject walked through the vestibule, opened the lobby doors, and stepped inside of the bank while holding a black firearm in his right hand and carrying a black bag. As a bank customer walked towards the exit doors, the subject turned and fled.

7. Officers of the West Allis Police Department were dispatched and responded to the bank. Witnesses described the subject as a male black, approximately 20 to 30 years old, approximately 6 feet tall with a skinny build, wearing a yellow traffic vest, dark clothing, and a mask. A witness observed a "white contractor type van with side windows" drive by twice after the subject fled.

8. The bank's surveillance video shows a subject wearing a dark hooded sweatshirt, dark pants, a yellow traffic vest bearing the words "POBLOCKI PAVING" on the back, and black high-top shoes with red markings. The subject's hood is up, and the brim of his baseball cap is visible.

9. Officers canvassed for the subject without success.

10. Four days later on Tuesday, August 28, 2018 at approximately 9:49 a.m., a black male subject, later identified as Quadir S. El Amin, robbed the same Wells Fargo bank. Again, the subject was a black male with a thin build wearing a dark hooded sweatshirt, dark pants, a yellow traffic vest bearing the words "POBLOCKI PAVING" on the back, and black high-top shoes with red markings. The subject approached a bank employee, pointed a small black firearm with a laser sight in his face, walked the employee over to the teller line, provided the employee the duffel bag, and told the employee to give the duffel bag to the teller. In response to verbal demands and threats, the teller filled the bag with money along with four bait bills and a GPS tracker. The subject took the bag and fled.

3

11. Based on information from a parking enforcement employee and the GPS tracking device, officers initiated a pursuit of a white cargo van bearing Wisconsin license plate 709-YLG. Officers briefly lost sight of the white cargo van when it turned onto a side street. Officers observed El Amin running away from the van and gave chase. During that chase, El Amin tossed the duffel bag into some bushes near an apartment building before being taken into custody at approximately 9:57 a.m. At the time of his arrest, El Amin was wearing blue jeans, a black t-shirt, and black Nike Air Jordan high-top shoes with red markings.

12. An officer recovered an LG cellphone from El Amin's left pants pocket, and a second officer recovered a small black pistol with a laser sight from his right pocket along with keys to the white cargo van. Officers also recovered the duffel bag, which contained the bank's money, bait bills, and GPS tracking device.

13. A review of the Wisconsin Department of Transportation's Division of Motor Vehicles records revealed that the registered owner for vehicle registration 709-YLG is Nicholas D. Williams (DOB: 08/13/1981). On September 4, 2018, Detective Caleb Porter of the West Allis Police Department interviewed Williams. Williams stated that the white cargo van had previously been used for a transport business owned by Adam Hampton and that he last saw the white cargo van parked behind Hampton's residence.

14. On September 6, 2018, Detective Porter then interviewed Adam Hampton, who stated that he was in the process of selling the white cargo van with Wisconsin license plate 709-YLG to Leslie Wilbert. Hampton allowed Wilbert to use the white cargo van, because he had paid a $500 down payment. However, Hampton would not transfer the title until Wilbert paid the balance. Hampton stated that Wilbert called him shortly after the robbery and stated that he had

loaned the vehicle to another person to pick up supplies at Menard's, and the person had been pulled over while driving the van.

15. Later that day, Detective Porter interviewed Wilbert, who stated that he loaned the white cargo van with Wisconsin license plate 709-YLG to Quadir S. El Amin on August 28, 2018—the day of the robbery at Wells Fargo Bank. According to Wilbert, El Amin came to Wilbert's house and asked to borrow the van to pick up supplies at Menard's for a side job. Wilbert agreed and told El Amin that he needed the van returned later that same day. Approximately thirty minutes after El Amin took the van, Wilbert received a call from El Amin from an unknown phone number. El Amin sounded distressed and advised that he had to jump out of the van. El Amin did not tell Wilbert where he was located. The call ended before Wilbert could obtain more information.

16. Wilbert stated that he and El Amin met while incarcerated and stayed in contact after their release. Wilbert claimed that he last spoke with El Amin a few weeks before the day of the robbery. El Amin told Wilbert that he was losing his job and needed work. Wilbert stated that he did not want El Amin's vehicle at his house, so he drove the vehicle to El Amin's family the same day. After seeing a still photograph from the bank robbery, Wilbert stated that he previously worked for Poblocki Paving, but denied having a Poblocki Paving vest or providing the vest to El Amin. Wilbert provided a phone number of (414) 937-0832.

17. A search warrant was issued to conduct a forensic analysis of El Amin's LG cellphone. The phone number assigned to El Amin's LG cellphone is (414) 519-1365. That forensic analysis shows multiple phone calls and text messages between (414) 519-1365 and (414) 588-1797, shortly before and after the crimes on August 24, 2018 and August 28, 2018.

5

18. Detective Porter reviewed publicly available information compiled by a consumer credit reporting agency, which lists Leslie Wilbert as one of four people associated with phone number (414) 588-1797.

19. On August 24, 2018, El Amin placed phone calls from (414) 519-1365 to (414) 588-1797 at 11:57 a.m. and 12:03 p.m. He then exchanged the following communications with that same number:

| 1790 | SMS Messages | Outgoing | | | 8/24/2018 12:13(UTC-5) | To: (414) 588-1797 | this day this time not good g [CB]4145191365 Source Extraction: Physical |
|---|---|---|---|---|---|---|---|
| 1791 | SMS Messages | Incoming | | | 8/24/2018 12:13(UTC-5) | From: 4145881797 | Its empty [CB]4145881797 Source Extraction: Physical |
| 1792 | SMS Messages | Incoming | | | 8/24/2018 12:14(UTC-5) | From: 4145881797 | Its empty [CB]4145881797 Source Extraction: Physical |
| 1793 | SMS Messages | Outgoing | | | 8/24/2018 12:15(UTC-5) | To: (414) 588-1797 | we need to be over here earlier its plenty people out [CB]4145191365 Source Extraction: Physical |
| 1794 | Call Log | Incoming | | | 8/24/2018 12:17(UTC-5) | From: 4145881797 | 00:00:47 Source Extraction: Physical |

20. Approximately an hour later at 1:22 p.m., El Amin ran into the Wells Fargo bank while brandishing a firearm. Immediately afterwards, he placed multiple phone calls to the same phone number at 1:22, 1:23, 1:24, 1:25, and 1:34 p.m.

21. Later that evening, El Amin exchanged the following text messages with (414) 588-1797:

| 1852 | SMS Messages | Incoming | | | 8/24/2018 19:58(UTC-5) | From: 4145881797 | Bro is we on fasho [CB]4145881797 Source Extraction: Physical |
|---|---|---|---|---|---|---|---|
| 1853 | SMS Messages | Incoming | | | 8/24/2018 19:58(UTC-5) | From: 4145881797 | Bro is we on fasho [CB]4145881797 Source Extraction: Physical |
| 1855 | SMS Messages | Outgoing | | | 8/24/2018 19:59(UTC-5) | To: (414) 588-1797 | yes [CB]4145191365 Source Extraction: Physical |
| 1856 | SMS Messages | Incoming | | | 8/24/2018 20:00(UTC-5) | From: 4145881797 | Say no more [CB]4145881797 Source Extraction: Physical |
| 1857 | SMS Messages | Incoming | | | 8/24/2018 20:00(UTC-5) | From: 4145881797 | Say no more [CB]4145881797 Source Extraction: Physical |

6

| 1907 | SMS Messages | Outgoing | | | 8/24/2018 22:10(UTC-5) | To: (414) 588-1797 | my nigga u think we can have somebody go in there in the morning just to check trap [CB]4145191365 Source Extraction: Physical |
| 1908 | SMS Messages | Incoming | | | 8/24/2018 22:12(UTC-5) | From: 4145881797 | Yup [CB]4145881797 Source Extraction: Physical |
| 1909 | SMS Messages | Incoming | | | 8/24/2018 22:12(UTC-5) | From: 4145881797 | Yup [CB]4145881797 Source Extraction: Physical |

| 1912 | SMS Messages | Outgoing | | | 8/24/2018 22:18(UTC-5) | To: (414) 588-1797 | we gone boss [CB]4145191365 Source Extraction: Physical |
| 1913 | SMS Messages | Incoming | | | 8/24/2018 22:18(UTC-5) | From: 4145881797 | Ok [CB]4145881797 Source Extraction: Physical |
| 1914 | SMS Messages | Incoming | | | 8/24/2018 22:19(UTC-5) | From: 4145881797 | Ok [CB]4145881797 Source Extraction: Physical |
| 1915 | SMS Messages | Outgoing | | | 8/24/2018 22:19(UTC-5) | To: (414) 588-1797 | just to make sure they aint on nothing [CB]4145191365 Source Extraction: Physical |

22. El Amin exchanged multiple phone calls and text messages with (414) 588-1797 over the next few days, including the following on August 26, 2018:

| 2337 | SMS Messages | Outgoing | | | 8/26/2018 17:58(UTC-5) | To: (414) 588-1797 | u getting that car in the morning [CB]4145191365 Source Extraction: Physical |

| 2357 | SMS Messages | Incoming | | | 8/26/2018 18:39(UTC-5) | From: 4145881797 | We on [CB]4145881797 Source Extraction: Physical |
| 2358 | SMS Messages | Incoming | | | 8/26/2018 18:39(UTC-5) | From: 4145881797 | We on [CB]4145881797 Source Extraction: Physical |
| 2359 | SMS Messages | Outgoing | | | 8/26/2018 18:44(UTC-5) | To: (414) 588-1797 | ok [CB]4145191365 Source Extraction: Physical |

23. On August 28, 2018—the morning of the robbery, El Amin exchanged the following text messages with (414) 588-1797:

| 2545 | SMS Messages | Incoming | | | 8/28/2018 08:01(UTC-5) | From: 4145881797 | U up [CB]4145881797 Source Extraction: Physical |
| 2546 | SMS Messages | Incoming | | | 8/28/2018 08:01(UTC-5) | From: 4145881797 | U up [CB]4145881797 Source Extraction: Physical |
| 2547 | SMS Messages | Outgoing | | | 8/28/2018 08:22(UTC-5) | To: (414) 588-1797 | leaving out now [CB]4145191365 Source Extraction: Physical |
| 2548 | SMS Messages | Incoming | | | 8/28/2018 08:25(UTC-5) | From: 4145881797 | Ok [CB]4145881797 Source Extraction: Physical |
| 2549 | SMS Messages | Incoming | | | 8/28/2018 08:25(UTC-5) | From: 4145881797 | Ok [CB]4145881797 Source Extraction: Physical |

7

24. El Amin then received a 27-second phone call from the same number at 9:33 a.m. The bank robbery was committed at approximately 9:49 a.m. He then placed a minute-long phone call to the same number at 9:56 a.m. minutes before his arrest. That last phone call is consistent with surveillance video showing El Amin using a cellphone while fleeing on foot.

25. On or about December 3, 2018, U.S. Cellular provided call detail records with cell site information for the cellular telephones assigned call numbers (414) 519-1365 to (414) 588-1797. An analyst from the FBI mapped the cell site information for those call numbers around the time of the incidents on August 24, 2018 and August 28, 2018. Those maps indicate that both the cellular telephone assigned call number (414) 519-1365 and the cellular telephone assigned call number (414) 588-1797 were in close proximity to the Wells Fargo Bank, located at 6130 West National Avenue in Milwaukee, Wisconsin, and each other around the time of the attempted bank robbery on August 24, 2018 and the around the time of the robbery on August 28, 2018.

26. Detective Porter reviewed surveillance video from the Wells Fargo bank on August 24, 2018—the day of the attempted bank robbery. At approximately 12:08 p.m., a black male, matching Leslie Wilbert's description, entered the Wells Fargo bank and then exited at 12:15 p.m. That subject was wearing camouflage pants, a white t-shirt, sunglasses, and a tan checkered baseball cap with a red accent on the side.

27. Wells Fargo provided Detective Porter with information that Leslie Wilbert met with a banker at the Wells Fargo branch, located at 7600 West Hampton Avenue in Milwaukee, and inquired about opening a temporary debit card. A review of the surveillance images from that Wells Fargo branch showed the same black male, wearing camouflage pants, a white t-shirt, sunglasses, and a tan checkered baseball cap with a red accent on the side.

8

28. Detective Porter entered the phone number provided by Wilbert—(414) 937-0832—into www.facebook.com. The phone number was connected to the account "LesThe Best" (www.facebook.com/lesthe.best.5). That account had numerous photographs of Leslie Wilbert, including a photograph with Wilbert wearing a tan checkered baseball cap with a red accent on the side. This baseball cap appears to be the same one worn by Wilbert inside of the Wells Fargo bank branches on August 24, 2018.

29. On November 6, 2018, T-Mobile provided Special Agent Robert Rice with the subscriber information related to call number (414) 937-0832, which identified Tanya Wilbert, with an address located at 1915 West Fairmount Avenue in Milwaukee, Wisconsin, as the subscriber to that call number.

30. On February 15, 2019, Leslie Wilbert was interviewed by Detective Porter and Special Agent Rice. During the interview, Wilbert reiterated his story that he had received a call from El Amin from an unknown phone number on August 28, 2018. During the call, El Amin sounded distressed and advised that he had to jump out of the van. The call ended before Wilbert could obtain more information. Wilbert was asked about his whereabouts on August 24, 2018. Wilbert remembered that day because it was his daughter's birthday. Initially, Wilbert stated that he stayed at home all day and then went out to eat with his daughter for her birthday. Wilbert was shown photographs of a black male, wearing camouflage pants, a white t-shirt, sunglasses, and a tan checkered baseball cap with a red accent on the side. Wilbert identified himself in the photographs. Wilbert was advised that the photographs were Wells Fargo surveillance photographs taken approximately one hour apart at two separate Wells Fargo branches on August 24, 2018. Wilbert changed his story and told investigators that he went to Wells Fargo at 7600 West Hampton Avenue to get a new card, but was not able to complete the transaction at

9

that branch and had to go to the branch located at 6130 West National Avenue in West Allis, Wisconsin. Wilbert denied any knowledge of telephone number (414) 588-1797. Wilbert also denied texting El Amin from this phone number, while inside of the Wells Fargo Bank on August 24, 2018 and denied receiving a phone call from El Amin at (414) 588-1797 just prior to El Amin's arrest on August 28, 2018. Wilbert told investigators that he received the aforementioned August 28, 2018 call from El Amin on his cell phone, which Wilbert advised is (414) 937-0832.

31. Based on the text messages between El Amin and (414) 588-1797, Wilbert's presence inside of the two Wells Fargo branches within one hour of each other, and the attempted robbery of the Wells Fargo bank approximately one hour after Wilbert exited the bank, I believe that Wilbert acted in concert with El Amin to commit the attempted bank robbery on August 24, 2018. I also believe that Wilbert loaned El Amin the white cargo van bearing Wisconsin license plate 709-YLG on August 28, 2018 as a getaway vehicle for the armed bank robbery, because the registration was not listed to El Amin or Wilbert.

32. In my training and experience, I have learned that T-Mobile is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to

10

a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

33. I know that T-Mobile can collect cell-site data about the cellular telephones using their network. I also know that wireless providers such as T-Mobile typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes. From this data, wireless providers such as T-Mobile can also estimate the historical location of a cellular phone using their network.

34. Based on my training and experience, I also know that wireless providers such as T-Mobile typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the methods of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as T-Mobile typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the cellular telephones' user or users and may assist in the identification of co-conspirators.

35. The information requested in this application likely contains evidence of the locations of the cellular telephone assigned call number (414) 937-0832 relative to the Wells

11

Fargo bank immediately before, during, and after the crimes charged and the locations of this cellular telephone relative to the cellular telephones assigned call numbers (414) 519-1365 and (414) 588-1797. The requested records also likely contain evidence of the identity, ownership, and custody of the cellular telephone assigned call number (414) 937-0832.

## AUTHORIZATION REQUEST

36. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

37. I further request that the Court direct T-Mobile to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on T-Mobile, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

38. I further request that the Court order T-Mobile not to notify any person, including the subscribers or customers of the accounts listed in Attachment A, of the existence of the Warrant for a time period of six months. See 18 U.S.C. § 2705(b). This Court has authority under 18 U.S.C. § 2705(b) to issue "an order commanding a provider of electronic communications service or remote computing service to whom a warrant, subpoena, or court order is directed, for such period as the court deems appropriate, not to notify any other person of the existence of the warrant, subpoena, or court order." *Id.* In this case, such an order would be appropriate because the requested Warrant relates to an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation, and its disclosure may alert the target to the ongoing investigation. Accordingly, there is reason to believe that notification of the existence of

12

the requested Warrant will seriously jeopardize the investigation, including by giving a target an opportunity to flee or continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, or notify confederates. *See* 18 U.S.C. § 2705(b)(2), (3), (5). Some of the evidence in this investigation is stored electronically. If alerted to the investigation, the subjects under investigation could destroy that evidence.

## ATTACHMENT A

### Property to Be Searched

This warrant applies to records and information associated with the cellular telephone assigned call number (414) 937-0832 ("the Account"), that is stored at premises controlled by T-Mobile ("the Provider"), headquartered at Custodian of Records, 4 Sylvan Way, Parsippany, New Jersey 07054.

## ATTACHMENT B

### Particular Things to be Seized

### I. Information to be Disclosed by the Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period **August 1, 2018 through September 30, 2018:**

a. The following information about the customers or subscribers of the Account:

   i. Names (including subscriber names, user names, and screen names);

   ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii. Dates of birth;

   iv. Alternate phone numbers;

   v. Other phone numbers on the same Account;

   vi. Local and long distance telephone connection records;

   vii. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   viii. Length of service (including start date) and types of service utilized;

   ix. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

x. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

xi. Means and source of payment for such service (including any credit card or bank account number) and billing records.

b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses);

ii. information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received, including the locations of any cell tower and antenna face; and

iii. historical location records (including Estimated Location records, geolocation information (PING), Network Event Location System (NELOS) data, Global Positioning System (GPS) data, cell tower triangulation or trilateration, round-trip time, per-call measurement data (PCMD), historical E911 data, or precision measurement information).

c. A list of definitions identifying all information contained in the records.

## II. Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations of Title 18, United States Code, Section 2113(a) (entering to commit a bank robbery), Title 18, United States Code, Section 2113(a) and (d) (armed bank robbery), Title 18, United States Code, Section 924(c)(1)(A)(ii) (use of a firearm during a crime of violence), and Title 18, United States Code, Sections 922(g)(1) and 924(e) (unlawful possession of a firearm by a prohibited person) during the period **August 1, 2018 through September 30, 2018**.